IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY QUENTIN KELLY, #352736　　*
　　　　Plaintiff,
　　v.　　　　　　　　　　　　　　　　*　CIVIL ACTION NO. RDB-16-2603

CHARLOTTE ZIES, *Case Management*　*
　　*Specialist*
DEPARTMENT OF PUBLIC SAFETY AND　*
CORRECTIONAL SERVICES
　　　　Defendants.　　　　　　　*
　　　　　　　　　　　　　　　　*****

## **MEMORANDUM OPINION**

On July 15, 2016, the Court received for filing inmate Anthony Kelly's self-represented 42 U.S.C. § 1983 civil rights action. The Complaint seeks damages from the Maryland Department of Public Safety and Correctional Services ("DPSCS") and its personnel. Defendants have filed an unopposed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16), as well as a legal memorandum (ECF No. 16-1),[1] and exhibits.[2] ECF No. 16-2 through ECF No. 16-5. Also pending before the Court is Kelly's Emergency Motion for Leave to File an Amended Complaint, which the Court shall deny. ECF No. 15.

The matter is ready for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). Defendants' Motion, construed as a motion for summary judgment, IS GRANTED for reasons to follow.

---

[1] All exhibits are referenced by their electronic filing number.

[2] Kelly was notified of Defendants' dispositive filing and his obligations thereto under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). *See* ECF No. 17. Although granted additional time to file an opposition (ECF No. 20), he has failed to do so.

## I. Background

Kelly, who is currently confined at the North Branch Correctional Institution ("NBCI"), alleges that on June 20, 2016, Case Management Specialist Zies retrieved his legal documents from her mailbox to make copies for him. He complains that since July 7, 2016, Zies has refused to return his legal documents unless Kelly dropped his lawsuit pending in the United States Court of Appeals for the Fourth Circuit against Leslie Simpson, *see Kelly v. Simpson*, CA-16-6598 (4th Cir. 2016). He further claims that Zies is trying to stop him from challenging his conviction and sentences in the U.S. Supreme Court. ECF No. 1, p. 2. Kelly contends that he filed an administrative remedy procedure ("ARP") grievance regarding Zies' actions, but Officer Gilpin indicated he was "going to trash it." Kelly claims that he did not receive an acknowledgement receipt of the ARP from the ARP Coordinator. *Id.*, p. 3. In his Motion to File an Amended Complaint, Kelly seeks to add the State of Maryland and Warden Frank Bishop as Defendants and to generally invoke the Americans With Disabilities Act ("ADA") as part of his Complaint. ECF No. 15.

Leave to amend shall be denied. A § 1983 lawsuit may not be filed against the State of Maryland. The State is not a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, the State of Maryland is immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000).

Further, although Kelly names Warden Bishop in the caption of his Amended Complaint, he makes no claims against Bishop in the body of the Amended Complaint. A claim of personal

or supervisory culpability has not been made against Bishop.

Finally, although Kelly cites to the ADA, he provides no claims under that statute. He has failed to show that he has a qualifying disability under the ADA. To state a claim for violation of the ADA, Kelly must show that he (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied the benefits of the program or discriminated against because of the disability. *See Millington v. Temple Univ. Sch. Of Dentistry*, 261 Fed. App. 363, 365 (3rd Cir. 2008). A physical condition may qualify as a "disability" within the meaning of the ADA because it "substantially limits one or more ... major life activities." 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B). Under the law in this circuit, to establish that he is disabled under the ADA, Kelly must prove that: he has a physical or mental impairment; that this impairment implicates at least one major life activity; and the limitation is substantial. *See Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006).

## II. Standard of Review

Defendants' Motion is styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

3

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167. Given the exhibits presented here (which were also presented to Kelly), the Court has ample information with which to address the pleading as filed for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

4

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

Because Kelly is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

5

### III. Discussion

Defendant Zies generally denies Kelly's claim, affirming that she has never withheld Kelly's legal papers forwarded to her for copying purposes, nor has she ever harassed, threatened, or attempted to persuade Kelly to withdraw his civil litigation against Leslie Simpson. ECF No. 16-2, at Zies Decl. Further, Officer Larry Gilpin maintains that at no time has he misplaced Kelly's ARP or interfered with his ability to exhaust the ARP process. ECF No. 16-3, at Gilpin Decl.

Defendants further maintain that the NBCI ARP Coordinator was unable to find any ARP filed by Kelly regarding Zies' alleged refusal to return his legal documents. They do, however, point to the fact that Kelly was able to file ARPs on June 16 and June 22, 2016 to complain that officers were destroying his legal mail in retaliation for his lawsuit against Leslie Simpson and that Warden Bishop was holding up his outgoing legal mail and having Kelly's mail screened to make his legal filings untimely. ECF No. 16-4, at McKenzie Decl. Defendants additionally present the Declaration of the Executive Director of the Inmate Grievance Office ("IGO") who attests to the fact that Kelly did not file any grievance appeal with the IGO. ECF No. 16-5, at Neverdon Decl.

### IV. Analysis

Defendants raise several affirmative defenses: entitlement to Eleventh Amendment immunity, Kelly's failure to exhaust available administrative remedies, his failure to state a claim, and qualified immunity. The affirmative defense of administrative exhaustion shall be addressed before the Court may examine the merits of Kelly's claims. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a). *See Ross v. Blake*, __ U.S.__ 136 S.Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857, *Jones v. Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones*, 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones*, 549 U.S. at 211–12, 216; *Moore*, 517 F.3d at 725.

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First,

7

"an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. *See* Code of Md. Regs. ("COMAR"), tit. 12 §07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office. *See* Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the Inmate Grievance Office ("IGO)"). <u>See</u> Md. Corr. Servs., Code Ann.. §10-207; COMAR, tit. 12 §07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Corr. Servs., Code Ann. §10-207(b)(1); *see* COMAR, tit. 12 §07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Corr. Servs., Code Ann.. §10-207(b)(2)(ii). However, if a hearing is deemed

necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Cts. & Jud. Proc., Code Ann., §10-208(c); COMAR tit. 12 §07.01.07-.08. The conduct of such hearings is governed by statute. *See* Md. Corr. Servs., Code Ann.. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Corr. Servs., Code Ann. §10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Corr. Servs., Code Ann. §10-210. An inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.. Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").[3]

Kelly's original Complaint contended that his ARP concerning Zies' refusal to return his legal papers was intentionally misplaced or destroyed. Although he does not directly refute Defendants' declarations that they did not intentionally misplace his remedy, the Court is not inclined to dismiss the Complaint on this affirmative defense in light of Kelly's initial statements

---

[3] Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by Defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

regarding his attempts to file an ARP and NBCI staff interference. Instead, the Court examines whether summary judgment in favor of the Defendants would be appropriate because the unopposed pleadings, declarations, and exhibits on file demonstrate that they did not violate Kelly's constitutional rights.

Defendants correctly assert that the DPSCS is not a person within the meaning of 42 U.S.C. § 1983 and the State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. Defendant DPSCS is a state agency. *See* Md. Code. Ann., Corr. Servs., Art., §§ 1-101(f) and 2-101. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000). Consequently, the Complaint against the DPSCS is subject to dismissal for want of jurisdiction.

Kelly's cause of action against Case Management Specialist Zies may be interpreted to state an access-to-courts claim and it is subject to dismissal because he has failed to demonstrate injury caused by Zies' alleged action or inaction. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). In 1996, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349

10

(1996). According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Simply put, in order to state a claim for denial of access to the courts, a prisoner must provide some basis for his allegation that he has been deprived of meaningful access to the courts. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989).

In addition, a plaintiff must show actual injury resulting from the alleged denial of access. *Lewis*, 518 U.S. at 349. The plaintiff must identify with specificity the actual injury resulting from the defendants' conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316–17 (4th Cir. 1996). The "'actual injury' that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistant program have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim." *Lewis*, 518 U.S. at 343; *see also Michau v. Charleston Cnty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (in access-to-court claim, inmate must allege and show that he or she has suffered an actual injury or specific harm to his litigation efforts as a result of the defendant's actions).

Kelly has failed to set out a colorable access-to-courts claim. He does not refute Zies' affirmations, nor has he shown that any alleged actions or inactions taken by Zies prevented him from proceeding in any court or that he missed any court-imposed deadlines. Indeed, the docket shows that Kelly's was not impeded from filing numerous pleadings and documents in this court and in the Fourth Circuit during 2016.[4]

---

[4] In addition to this case, Kelly has filed and litigated numerous cases. *See Kelly v. Bishop, et al.*, Civil Action No. RDB-15-3795 (D. Md.); *Kelly v. Lease, et al.*, Civil Action No. RDB-16-3294 (D. Md.); *Kelly v. Bishop*, Civil Action No. RDB-16-3536 (D. Md.); *Kelly v.*

11

## Conclusion

Kelly has failed to prove that Defendants violated his constitutional rights. Summary judgment will be entered in favor of Defendants in a separate Order to follow.[5]

Date: *April 28, 2017*   /s/ *Ru D. B...*
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

*Bishop, et al.*, Civil Action No. RDB-16-3668 (D. Md.); *Kelly v. State of Maryland, et al.*, RDB-16-3713 (D. Md.); *Kelly v. State of Maryland, et al.*, RDB-16-3907 (D. Md.); *Kelly v. State of Maryland, et al.*, Civil Action No. RDB-16-3811 (D. Md.); *Kelly v. Simpson. et al.*, Civil Action No. RDB-16-4067 (D. Md.); *Kelly v. Moyer, et al.*, Civil Action No. RDB-16-4143 (D. Md.); *see also Kelly v. Simpson*, CA-16-6598 (4th Cir. 2016);

[5] In light of this decision, the Court need not evaluate Defendants' qualified immunity defense.